IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ROBBIE CHRISHON-SKINNER,** | * | |
| **Plaintiff,** | * | |
| v. | * | **CIVIL NO. JKB-25-0315** |
| **CARL C. JONES,** *et al.*, | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Plaintiff Robbie Chrishon-Skinner, who proceeds pro se, filed suit against (1) Carl C. Jones; (2) Noel C. Osborne, Sr.; and (3) the Most Worshipful Prince Hall Grand Lodge, Free and Accepted Masons, of Maryland and its Jurisdictions, Inc. ("Grand Lodge"). (ECF No. 1.) Defendants have filed a Motion to Dismiss. (ECF No. 18.) For the following reasons, the Motion to Dismiss will be granted and the case will be closed.

### I. Factual Background

Plaintiff was a member of the "Myra Grand Chapter, Order of the Eastern Star, PHA, Maryland and its Jurisdiction, Inc." ("Myra Grand Chapter"). (ECF No. 1 ¶ 2.) She was "the elected Grand Associate Matron[,] the 3rd highest officer and one of the incorporators of Myra Grand Chapter," and served as its Audit, Budget, and Finance Director. (*Id.*) Defendant Grand Lodge is a fraternal organization, which has never admitted female members. (*Id.* ¶¶ 6–7.) "[T]he female family members of the [Grand Lodge] are organized into [the Myra Grand Chapter,] which elects its own officers and directors, and maintains separate bank accounts." (*Id.* ¶ 8.) Jones is sued individually and in his official capacity as Grand Worthy Patron of Myra Grand Chapter, and

Osborne is sued individually and in his capacity as Most Worshipful Grand Master of the Grand Lodge. (*Id.* ¶ 3–4.) Plaintiff has also sued the Grand Lodge. (*Id.* ¶ 5.)

Plaintiff alleges that, in 2023, Osborne "cancelled a hotel contract between Myra Grand Chapter . . . and [a] Marriott hotel without the approval of Myra Grand Chapter." (*Id.* ¶ 10.) Plaintiff alleges that Osborne did so because he wanted the Myra Grand Chapter and the Grand Lodge to hold a joint conference, "so that he could enhance the Grand Lodge finances by collecting the registration from the members of the Myra Grand Chapter along with the financial benefits obtained from the hotel." (*Id.*)

On May 9, 2024, Plaintiff, as the Audit, Budget, and Finance Director of Myra Grand Chapter, asked the Myra Grand Chapter Grand Fiscal Secretary and Treasurer about a $3,000 check made out to the Grand Lodge. (*Id.* ¶ 11.) On May 20, 2024, she sent an email on behalf of the Audit, Budget, and Finance Committee to Grand Treasurer Adele Osborne (Osborne's wife) seeking clarification regarding certain expenditures, including $10,000 to the Grand Lodge. (*Id.* ¶ 12.) Plaintiff alleges that "Grand Treasurer Osborne responded that the $10,000 could be deleted from the budget." (*Id.*)

On May 21, 2024, Plaintiff received a call from Grand Associate Patron Marcilus Jolly, "advising her that Grand Master Osborne was upset and disturbed that she had said that he was stealing money from Myra Grand Chapter." (*Id.* ¶ 13.) On May 22, 2024, during a Myra Grand Chapter Zoom call with approximately 200 participants, Osborne "said to everyone that he was told that [Plaintiff] had told someone that he . . . was taking money from Myra Grand Chapter." (*Id.* ¶ 14.) He stated that "he does not take money, he gives money." (*Id.*)

On May 28, 2024, Osborne requested to meet with Plaintiff. (*Id.* ¶ 15.) She responded with a letter expressing that she felt "publicly disrespected, humiliated, and embarrassed" by his comments during the Zoom call. (*Id.* ¶ 16.) At the meeting, Jones told Plaintiff she was suspended.

(*Id.* ¶ 17.) And the next day, Jones sent a letter indefinitely suspending her. (*Id.* ¶ 18.) The letter provides that "[i]n accordance with Myra Grand Chapter Constitution Article III, Section 3; and in Consultation with the Grand Worthy Matron Sister Chelly A. Jones . . . To all who see these presents and pursuant to Myra Grand Chapter Constitution Article III, Section 3 and Article XXIV, Section 11, I do hereby suspend Past Matron Robbie Chrishon-Skinner . . . for unmasonic conduct, contumacy, and conduct unbecoming of a leader." (ECF No. 1-1 at 10.)

On June 17, 2024, the Grand Lodge Deputy Grand Master sent a summons to Plaintiff to appear before an Inquiry Committee of the Grand Lodge. (ECF No. 1 ¶ 20.) On July 16, 2024, the Grand Lodge sent a letter to Plaintiff seeking that she "appear before a Masonic Trial Board" of the Grand Lodge. (*Id.* ¶ 22.) That letter, which is attached to the Complaint, provides that she was charged with "Un-Masonic Conduct, Contumacy, and Conduct Unbecoming of a Leader" based upon "the findings of the Board of Inquiry held on Monday, July 15, 2024." (ECF No. 1-1 at 12.) She was "notified that under Article XIV of the Constitution of the [Grand Lodge] . . . [and that she was] requested to appear before a Masonic Trial Board" for the charges. (*Id.*; *see also* ECF No. 1 ¶ 22.)

On the basis of these allegations, Plaintiff brings the following causes of action: (1) "interference with the business relationship between Plaintiff and the Myra Grand Chapter and its vendors"; (2) "tortious interference with Plaintiff's membership contract"; (3) "conspiracy to commit tortious interference with Plaintiff's membership contract"; and (4) defamation.

## II.  Legal Standard

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter,

3

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

*Pro se* plaintiffs are held to a less stringent standard than lawyers, and courts construe their pleadings liberally, no matter how inartfully pled. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Carmax Auto Superstores, Inc. v. Sibley*, 194 F. Supp. 3d 392, 401 (D. Md. 2016), *aff'd*, 730 F. App'x 174 (4th Cir. 2018) ("The mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint in order for it to survive a motion to dismiss."). Nonetheless, a *pro se* complaint must still meet the "minimum threshold of plausibility" under *Twombly* and *Iqbal*. *Robb v. Md. Aviation Admin.*, Civ. No. JKB-14-1421, 2014 WL 4056030, at *3 (D. Md. Aug. 15, 2014).

### III. Analysis

#### A. Count 1: Interference with Business Relationship

Plaintiff alleges that the Defendants interfered with the relationship between Myra Grand Chapter and a Marriott hotel. The only allegations relating to this claim are that, in 2023, Defendant Osborne "cancelled a hotel contract between Myra Grand Chapter . . . and [a] Marriott hotel without the approval of Myra Grand Chapter." (ECF No. 1 ¶ 10.) Plaintiff alleges that

Osborne did so because he wanted the Myra Grand Chapter and the Grand Lodge to hold a joint conference so that the Grand Lodge could benefit financially. (*Id.* ¶ 11.)

This Court has explained that

> "Maryland recognizes the tort action for wrongful interference with contractual or business relationships in two general forms: inducing the breach of an existing contract and, more broadly, maliciously or wrongfully interfering with economic relationships." *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs.*, 650 A.2d 260, 268 (Md. 1994) (quotations, citation, and alterations omitted). The elements of tortious interference with an economic relationship are: "(1) intentional and wil[l]ful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Id.* at 269 (quotations and alterations omitted). In asserting a claim for wrongful interference with a business relationship, a plaintiff "must identify a possible future relationship which is likely to occur, absent the interference, with specificity." *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 546 (D. Md. 2006).

*Aarow Elec. Sols. v. Tricore Sys., LLC*, Civ. No. JKB-22-2363, 2024 WL 1443743, at *5 (D. Md. Apr. 3, 2024).

However, Plaintiff's claim here fails for the simple reason that, as she alleges, the Myra Grand Chapter—not Plaintiff—had a contract with a Marriott hotel. Plaintiff is not suing on behalf of the Myra Grand Chapter, nor is the Myra Grand Chapter a plaintiff in this action. To establish standing, a plaintiff must show (1) a "concrete, particularized, and actual or imminent" injury in fact; (2) that the injury "was likely caused by the defendant"; and (3) that the injury "would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)). "If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *Id.* (internal quotation marks and citation omitted). Here, Plaintiff has not established that she has suffered an injury with respect to the Marriott relationship. Thus, this claim must be dismissed.

### B. Counts 2 and 3: Tortious Interference with Contract

Plaintiff also alleges that Defendants tortiously interfered with her Myra Grand Chapter membership contract. This claim appears to based on the fact that she was suspended from Myra Grand Lodge.

"To establish a claim for tortious interference with contract under Maryland law, a plaintiff must allege the following five elements: (1) a contract exists between the plaintiff and a third party, (2) the defendant knows of that contract, (3) the defendant intentionally interferes with that contract (and the interference is wrongful and without justification); (4) the third party breaches that contract; and (5) the plaintiff suffers damages from the breach." *Lilly v. Baltimore Police Dep't*, 694 F. Supp. 3d 569, 594 (D. Md. 2023).

Plaintiff fails to sufficiently allege tortious interference with contract on every front. Plaintiff fails to sufficiently allege the first requirement: the existence of a contract between herself and a third party. Although Plaintiff alleges that she is a member of the Myra Grand Chapter, she does not allege the existence of a membership contract, nor any details regarding what such contract entails. In the same vein, Plaintiff has not alleged who precisely were the parties to any membership contract, and it is well-established that recovery is not "permitted . . . for the tort of intentional interference with a contract when both the defendant and the plaintiff were parties to the contract." *Wilmington Tr. Co. v. Clark*, 424 A.2d 744, 754 (Md. 1981). This is particularly salient here, where it appears that there is a significant relationship between the two organizations—the Myra Grand Chapter and the Grand Lodge—and their officers. (*See, e.g.*, ECF No. 1 ¶ 3 (alleging that Jones is the "Grand Worthy Patron of Myra Grand Chapter" and the "direct representative between Myra Grand Chapter and [the Grand Lodge]").)

With respect to the second and third elements, Plaintiff fails to allege that Defendants were aware of the contract, or that they intentionally interfered with the contract. Even assuming there

6

was some suspension process provided in a membership contract, Plaintiff has failed to allege how Defendants intentionally, wrongfully, and without justification interfered with that process.

With respect to the fourth element, Plaintiff has not sufficiently alleged that—to the extent that a membership contract even exists between Plaintiff and Myra Grand Chapter—Myra Grand Chapter breached that contract, given that (as previously noted) Plaintiff provides no details whatsoever about the contract. It is therefore not possible for the Court to discern whether it is plausible that Myra Grand Chapter breached a contract.

Finally, with respect to the fifth element, Plaintiff fails to allege damages arising from the breach. She alleges only vaguely that she has "suffer[ed] irreparable injury for which any legal remedy will not be adequate to remedy [sic]." (ECF No. 1 ¶ 30.)

Thus, Count 2, alleging tortious interference with contract must be dismissed. For the same reasons, Count 3, alleging conspiracy to commit tortious interference with contract, must also be dismissed. *See Lilly*, 694 F. Supp. 3d at 592 ("Civil conspiracy is not an independent cause of action under Maryland law, and a defendant's liability for civil conspiracy depends entirely on its liability for a substantive tort.") (citations and quotation marks omitted).

### C. Count 4: Defamation

Plaintiff also alleges defamation. To plead defamation under Maryland law, a plaintiff must allege "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 268 (D. Md. 2015) (citation and quotation marks omitted).

The Court presumes that this claim is based upon Osborne's statements during the Zoom call. With respect to that call, Plaintiff alleges that Osborne "said to [a Zoom audience of about 200] that he was told that [Plaintiff] had told someone that he . . . was taking money from Myra

Grand Chapter." (ECF No. 1 ¶ 14.) Plaintiff has not alleged that the statement was false. Rather, the Complaint itself reflects that, two days prior, Plaintiff had inquired into certain expenditures, including $10,000 to the Grand Lodge. (*Id.* ¶ 12.) Nowhere does Plaintiff allege the falsity of Osborne's statement that he was told that Plaintiff accused him of taking money, and in fact the Complaint reflects that this statement was true. Accordingly, this claim must also be dismissed.

## IV. Conclusion

For the foregoing reasons, it is ORDERED that:

1. Defendants' Motion to Dismiss (ECF No. 18) is GRANTED and Plaintiff's Complaint is DISMISSED.
2. The Clerk SHALL CLOSE this case.
3. The Clerk is DIRECTED to MAIL a copy of this Memorandum and Order to Plaintiff.

DATED this 23 day of April, 2025.

BY THE COURT:

James K. Bredar
United States District Judge